UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JERRY BRUCE STOCK II,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>JEFFREY A UTTECHT,<br><br>　　　　　　Respondent. | CASE NO. 3:20-CV-05778-RAJ-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: June 25, 2021 |

　　　　The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner Jerry Bruce Stock II filed his federal habeas Petition on August 3, 2020 pursuant to 28 U.S.C. § 2254, seeking relief from a state court conviction. *See* Dkt. 1. Currently before the Court is Respondent's Answer and Supplemental Answer. Dkt. 17, 18, 21.

　　　　After considering the relevant record, the Court concludes Petitioner's claims challenging a condition of community custody may be raised in a habeas action. However, the Court concludes the state court's adjudication of Petitioner's two grounds for relief was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, the undersigned recommends the Petition be denied.

## I. Background

Petitioner is in the custody of the Washington Department of Corrections ("DOC") pursuant to a conviction by guilty plea for two counts of child molestation in the second degree, one count of communication for in the second degree, one count of communication with a minor for immoral purposes, and one count of distribution of a controlled substance to a minor. Dkt. 18-1, Exhibit 1. The Kitsap County Superior Court sentenced Petitioner to 124 months of confinement plus 36 months of community custody. *Id.* at 4-5. His earned early release date is May 1, 2025. Dkt. 18-1, Exhibit 2 at 18.

Through counsel and *pro se*, Petitioner appealed to the Washington Court of Appeals. Dkt. 18-1, Exhibit 3, Brief of Appellant; Exhibit 4, Statement of Additional Grounds. The Washington Court of Appeals denied the appeal in an unpublished opinion. Dkt. 18-1, Exhibit 6. Petitioner, proceeding *pro se,* filed a Motion for Reconsideration, which was denied. Dkt. 18-1, Exhibit 7; Exhibit 8.

Petitioner then filed a Petition for Review with the Washington Supreme Court. Dkt. 18-1, Exhibit 9, Petition for Review. The Washington Supreme Court denied review without comment on June 3, 2020. Dkt. 18-1, Exhibit 10, Order. The Washington Court of Appeals issued its mandate on August 25, 2020. Dkt. 18-1, Exhibit 11, Mandate.

Petitioner filed a Personal Restraint Petition ("PRP") contesting his judgment and sentence on April 6, 2020 but moved for voluntary dismissal with prejudice on September 28, 2020. Dkt. 18-1, Exhibit 12.

On August 3, 2020, Petitioner initiated this federal action. Dkt. 1. On October 13, 2020, Respondent filed his Answer. Dkt. 10. On October 30, 2020, Petitioner filed a Motion to Amend, which the Court granted as a matter of course. Dkt. 12, 13, 14.

1    On November 17, 2020, Petitioner filed his Amended Petition and Memorandum of Law in
2  Support. Dkt. 15, 16. Petitioner alleges two grounds for relief: (1) community custody condition 15
3  (hereinafter "condition 15") which prohibits "joining or perusing any public social websites,"
4  violates the First Amendment and (2) condition 15 is unconstitutionally vague in violation of the
5  Due Process Clause. Dkt. 15 at 5-7, Dkt. 16.

6    On December 21, 2020, Respondent filed his Answer to the Petition. Dkt. 17, 18.
7  Respondent maintains the Petition should be dismissed because Petitioner's two grounds for
8  relief contest a specific community custody condition imposed by the sentencing court, which
9  must be brought in a civil rights lawsuit rather than a habeas petition because they challenge the
10 nature of Petitioner's community custody, rather than the fact or duration of community custody.
11 Dkt. 17 at 8-9.[1] Respondent requested the opportunity to brief the merits of the Petition if the
12 Court finds jurisdiction exists. *See* Dkt. 17 at 9, fn. 2. Petitioner filed a Traverse on January 4,
13 2021. Dkt. 19.

14   After considering the Answer and the relevant record, the Court ordered Respondent to
15 file a supplemental brief addressing the merits of Petitioner's claims. In doing so, the Court did
16 not make a determination on the issue of jurisdiction at the time, but rather, found the interests of
17 justice, including judicial efficiency and economy, favored consideration of the issue of
18 jurisdiction concurrently with the merits of the Petition. Dkt. 20. The Court re-noted the Petition
19 for consideration on April 30, 2021.

20   On March 8, 2021, Respondent filed his Supplemental Answer, arguing the Washington
21 Court of Appeals reasonably determined condition 15 did not violate the First Amendment and

---

[1] Respondent concedes the Petition is exhausted and timely. *See* Dkt. 17.

REPORT AND RECOMMENDATION - 3

was not unconstitutionally vague. Dkt. 21. On April 8, 2021, Petitioner filed his Supplemental Traverse. Dkt. 22. Respondent did not file a supplemental reply. *See* Dkt.

## II.     Statement of the Case

The Washington Court of Appeals summarized the facts in Petitioner's case as follows:

> The State charged Stock by amended information with attempted second degree child rape and communication with a minor for immoral purposes. Stock later agreed to plead guilty to two counts of second degree child molestation, communication with a minor for immoral purposes, and distribution of a controlled substance to a minor pursuant to *In re Pers. Restraint of Barr*, 102 Wn.2d 265, 684 P.2d 712 (1984), and *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).
>
> According to the probable cause statement, the State based its original charges on Stock's response to a Craigslist advertisement, his subsequent e-mail communications with an undercover officer posing as a 13-year-old, and his attempt to meet with the officer posing as a 13-year-old. The probable cause statement stated that Stock possessed unopened boxes of condoms, lubricant, and a syringe containing methamphetamine when he was arrested.
>
> At the change of plea hearing, Stock stated that he was freely and voluntarily pleading guilty to the amended charges after discussing the matter with his attorney. The trial court accepted Stock's guilty pleas, finding that they were knowingly, voluntarily, and intelligently made. The trial court also found that the probable cause statement provided a factual basis supporting the State's original charges and that Stock was pleading guilty pursuant to In re Barr to the lesser offenses of second degree child molestation and distribution of controlled substances to a minor to avoid greater punishment. 102 Wn.2d 265, 684 P.2d 712.
>
> At sentencing, the trial court imposed the following community custody conditions over Stock's objections:
>
> ....
>
> 15. Shall be prohibited from joining or perusing any public social websites, i.e., Facebook, MySpace, Craigslist, Backpage, etc[.]
>
> Clerk's Papers (CP) at 52-53.

Dkt. 18-1, Exhibit 6, Unpublished Opinion, at 1-2 (*State v. Stock*, 11 Wn. App. 2d 1054 (2019)).

## III.     Discussion

### A. Jurisdiction

Petitioner argues condition 15 is unconstitutional as a violation of the First Amendment and the Due Process Clause. Dkt. 15, 16.  Respondent first maintains the Petition should be

REPORT AND RECOMMENDATION - 4

dismissed because Petitioner's two grounds for relief contest a specific community custody condition imposed by the sentencing court, which must be brought in a civil rights lawsuit rather than a habeas petition because they challenge the nature of Petitioner's community custody, rather than the fact or duration of community custody. Dkt. 17 at 8-9.[2]

"Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus, *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973); requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam). A civil rights suit under § 1983 is not the appropriate mechanism for a person in state custody to challenge the legality of a criminal conviction or sentence. Rather, the validity of a conviction or sentence should be raised in a petition for habeas corpus. "[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck v. Humphrey,* 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez,* 411 U.S. 475, 488–90 (1973)); *see also Wilkinson v. Dotson,* 544 U.S. 74, 78 (2005). The Supreme Court emphasized "the need to ensure that state prisoners use only habeas corpus ... remedies when they seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson,* 544 U.S. at 81.

In *Drollinger v. Milligan,* 552 F.2d 1220 (7th Cir. 1977), the Seventh Circuit found that habeas corpus was the exclusive means for a probationer to challenge the terms of his or her probation. *Id.* at 1225. The court stated that because the parole conditions themselves are what

---

[2] Respondent concedes the Petition is exhausted and timely. *See* Dkt. 17.

REPORT AND RECOMMENDATION - 5

keep a parolee in custody, any challenges to those conditions must be brought in a habeas petition. *See id.* The court reasoned:

> Because probation is by its nature less confining than incarceration, the distinction between the fact of confinement and the conditions thereof is necessarily blurred. The elimination or substitution, for example, of one of the conditions of [the plaintiff's] probation would free her substantially from her confinement; figuratively speaking, one of the "bars" would be removed from her cell. The release from such custody, even if only partial, is the traditional function of the writ of habeas corpus. *Preiser, supra*, 411 U.S. at 484, 93 S.Ct. 1827. Cf. *Billiteri v. United States Bd. of Parole,* 541 F.2d 938, 947 (2d Cir. 1976). Therefore, [the plaintiff] must proceed by means of a petition for habeas corpus, a cause of action which initially requires the petitioner to exhaust her available state court remedies. 28 U.S.C. s 2254(b). *Fay v. Noia,* 372 U.S. 391, 434-35, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

*Id.* at 1225. *See also Williams v. Wisconsin,* 336 F.3d 576, 580 (7th Cir. 2003) (Relying on *Drollinger*, the court found the plaintiff who was challenging a term of his custody should have brought a habeas petition rather than a civil rights case)*; Bass v. Mitchell,* 53 F.3d 335, 1995 WL 244043, at *1 (8th Cir.1995) (citing *Drollinger,* 552 F.2d at 1224–25); *Cordell v. Tilton*, 515 F. Supp. 2d 1114, 1132 (S.D. Cal. 2007) (finding that without the conditions of parole, there was nothing to keep the plaintiff in custody, and therefore his challenge to the conditions of his parole was properly brought in a habeas petition).

Numerous other district courts in the Ninth Circuit have construed challenges to community custody conditions or parole terms as habeas petitions. *See Milam v. Dep't of Corr.,* 2020 WL 4446117, at *1 (W.D. Wash. June 11, 2020), *report and recommendation adopted,* 2020 WL 4431420 (W.D. Wash. July 31, 2020) (the petitioner alleged the trial court imposed an unauthorized term of community custody, which the court construed as a habeas petition, rather than a civil rights complaint); *Czapla v. Dep't of Corr.,* 2011 WL 6884679, at *5 (W.D. Wash. Aug. 8, 2011), *report and recommendation adopted,* 2011 WL 6887123 (W.D. Wash. Dec. 29, 2011) (the petitioner challenging geographic travel restrictions imposed as part of community

REPORT AND RECOMMENDATION - 6

custody was construed as a habeas petition); *McCrea v. Wofford,* 2019 WL 2583168, at *10 (W.D. Wash. Mar. 12, 2019), *report and recommendation adopted,* 2019 WL 1553677 (W.D. Wash. Apr. 10, 2019) (challenge to imposition of community custody conditions restricting petitioner's contact with minors without approval by the Department of Corrections and prohibiting unauthorized use of electronic media was construed as a habeas petition). Although *Drollinger* and the district court cases cited above are not binding on this Court, the Court finds them persuasive.

Citing *Nettles v. Grounds*, 830 F.3d 922, 934-35 (9th Cir. 2016) (en banc), Respondent argues if Petitioner were to prevail on any of his claims, "it would entail merely a lifting or alteration of the challenged conditions, rather than the elimination or reduction of his community custody term." Dkt. 17 at 9. In *Nettles,* a prisoner serving an indeterminate life sentence challenged a disciplinary violation and loss of time credits which implicated his release status because his chances of parole in the future would be benefitted without having the disciplinary violation considered at his future parole hearing. The Ninth Circuit, *en banc*, found that the claim was too speculative to be heard in habeas corpus because disciplinary violations were but a factor in parole suitability determinations, and as a result, would not sufficiently implicate a speedier setting of a parole date. *Nettles*, 830 F.3d at 935. The Ninth Circuit further concluded habeas relief is not available for "probabilistic claims," *i.e.*, where success on the claims "*could potentially* affect the duration of confinement" or is "*likely* to accelerate the prisoner's eligibility for parole." *Id.* at 933-34 (quotation omitted).

However, the situation here is unlike *Nettles* in that Petitioner does not seek relief related to a speculative or "probabilistic" claim. *Nettles,* 830 F.3d at 934-35. Rather, Petitioner is challenging a term of his sentence, condition 15, which imposes future restrictions on his liberty.

In other words, condition 15 controls crime related prohibitions from the trial court and his community custody term may be modified or revoked upon violation of such conditions. *See id.* Thus, the removal of the condition would free him, partially, from his community custody term.[3]

Thus, the Court concludes the Petition challenges the constitutionality of a specific aspect of Petitioner's sentence and the continued lawfulness of the sentence. As the Petition "attack[s] the legality of the ... sentence," *Nettles*, 830 F.3d at 933, it falls within the "core of habeas," *id.* at 928. The Court concludes that habeas jurisdiction exists for this Petition. The Court now proceeds to consider the merits of the Petition.

B. <u>Merits</u>

Petitioner raises two grounds for relief, both of which pertain to condition 15. Dkt. 18. In Ground One, Petitioner argues condition 15 is unconstitutional because it is not narrowly tailored. Dkt. 16 at 3. In Ground Two, Petitioner argues condition 15 is unconstitutionally vague. Dkt. 16 at 6.

---

[3] The Court also notes in asking this Court for relief, Petitioner argues his judgment and sentence should be amended and condition 15 should be striken and reversed and remanded for clarifying language. Dkt. 15 at 15. While a favorable outcome in the instant action would not guarantee an exoneration or termination of Petitioner's entire sentence (confinement and community custody), many habeas petitions do not order immediate release but rather give the state a chance to retry the case or otherwise rehear the matter at issue, without the error. For example, here, if the Petition were granted, the remedy would be a rehearing or modification of Petitioner's sentence by the sentencing court. Such relief is not available in a civil rights complaint where the sole remedies are damages or injunctive relief. *See id.*; *Dep't of Homeland Sec. v. Thuraissigiam,* 140 S. Ct. 1959 (2020) (internal quotation omitted) (release is the habeas remedy though not the "exclusive" result of every writ, given that it is often "appropriate" to allow the executive to cure defects in a detention); *Davis v. Reynolds*, 890 F.2d 1105, 1112 (10th Cir. 1989) (footnote omitted) (The court is "free ... to fashion the remedy as law and justice require ... [and is not required] to order ... [petitioner's] immediate release from physical custody."); *Bowen v. Maynard,* 799 F.2d 593, 614 n. 12 (10th Cir.), *cert. denied*, 479 U.S. 962 (1986) ("Generally, a district court ruling in the petitioner's favor in a habeas case provides a reasonable time in order to afford the State an opportunity to re-try the defendant or otherwise correct the constitutional infirmity."); *Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994). *See generally Thomas v. Arnold*, 2018 WL 279975, *3 (S.D. Cal. 2018) (*Nettles* did not bar habeas action in which petitioner seeking relief under California Penal Code § 3051 "request[ed] re-sentencing, and in the alternative, access to a parole hearing").

Condition 15 prohibits Petitioner from "joining or perusing any public social websites, i.e., Facebook, MySpace, Craigslist, Backpage, etc." during his term of community custody. Dkt. 18-1 at 15. Respondent argues the Washington Court of Appeals reasonably determined condition 15 does not violate the First Amendment and is not unconstitutionally vague. Dkt. 21.

With regard to Petitioner's challenge to condition 15, the Washington Court of Appeals held:

> Next, Stock claims that the community custody condition prohibiting him from "joining or perusing any public social websites, i.e. Facebook, MySpace, Craigslist, Backpage, etc[.]" violates his First Amendment free speech rights and is unconstitutionally vague. CP at 53. Again, we conclude that there is no good faith argument supporting these claims.
>
> Stock cites *Packingham v. North Carolina*,_ U.S._, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017) to support his claim that the condition prohibiting his access to public social websites violates his First Amendment rights. In *Packingham*, the United States Supreme Court held that a North Carolina law that "makes it a felony for a registered sex offender 'to access a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages'" violated the First Amendment because it restricted lawful speech. 137 S. Ct. at 1733 (quoting N.C. Gen. Stat. Ann.§§ 14-202.5(a), (e) (2015)). *Packingham* is clearly distinguishable and does not support Stock's claim.
>
> *Packingham* addressed the constitutionality of a criminal statute, but here Stock challenges a condition of his community custody. And it is well established that a "'defendant's constitutional rights during community placement are subject to the infringements authorized by the SRA [(Sentencing Reform Act of 1981)].'" *State v. Riles*, 135 Wn.2d 326, 347, 957 P.2d 655 (1998) (quoting *State v. Ross*, 129 Wn.2d 279,287, 916 P.2d 405 (1996)), *abrogated on other grounds by State v. Valencia*, 169 Wn.2d 782,239 P.3d 1059 (2010). A convicted defendant's "First Amendment right 'may be restricted if reasonably necessary to accomplish the essential needs of the state and public order.'" *State v. Bahl*, 164 Wn.2d 739, 757, 193 P.3d 678 (2008) (internal quotation marks omitted) (quoting *State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993)). But community custody prohibitions implicating First Amendment rights "must be sensitively imposed[,] ... must be clear[,] and must be reasonably necessary to accomplish state needs and public order." *Bahl*, 164 Wn.2d at 757-58.
>
> Here, as established in the probable cause statement, Stock engaged in sexually explicit conversations with a person he thought was 13 years old after responding to advertisement posted on the public social website Craigslist. The condition prohibiting Stock's access to similar public social websites is clearly related to his crimes of conviction and is reasonably necessary to promote the

> State's compelling interest in public safety. Moreover, unlike the criminal statute deemed unconstitutional in *Packingham*, here the condition does not create a blanket prohibition preventing Stock from accessing the internet altogether, and the prohibition applies only during Stock's community custody term. It is therefore narrowly tailored to serve the State's interest in public safety. *Bahl*, 164 Wn.2d at 757-58. The prohibition is also clear in its scope such that an ordinary person would be put on notice that they must avoid social media websites such as "Facebook, MySpace, Craigslist, Backpage, etc." CP at 53. Accordingly, there is no good faith argument that the condition is unconstitutionally vague or that it violates Stock's First Amendment rights.

Dkt. 18-1 at 79-80.

Habeas petitions arising under § 2254 are decided based on clearly established law as determined by the United States Supreme Court at the time of the state court decision. *See* § 2254(d). "Clearly established federal law" consists of governing legal principles established by the United States Supreme Court at the time a state court renders its decision. *Lockyer v. Andrade,* 538 U.S. 63 (2003). If there is no prior decision of the United States Supreme Court that would clearly entitle the petitioner to relief, "the state court's decision could not be 'contrary to' any holding from this [the United States Supreme] Court." *Woods v. Donald,* 575 U.S. 312, 317 (2015) (per curiam). The holding of the United States Supreme Court, not dicta, constitutes clearly established law. *White v. Woodall,* 572 U.S. 415, 419 (2014).

As he did before the Washington Court of Appeals, Petitioner cites to *Packingham v. North Carolina*, 137 S. Ct. 1730, 1731 (2017) in support of his position in his Petition. Dkt. 16 at 3. However, as found by the state courts, *Packingham* applied the First Amendment in analyzing speech restrictions on citizens at large, not those still serving a criminal sentence. *Id.* Therefore, the holding in *Packingham* does not apply. Invalidating the state court's decision because the state court did not extend the Supreme Court's precedent in a manner that the Supreme Court has not yet done would severely compromise the deference required under the statute. *Glebe v. Frost*, 574 U.S. 21, 23-25 (2014) (Ninth Circuit improperly extended structural error rule to grant

relief). "Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

Aside from *Packingham,* Petitioner has not cited to, nor is the Court aware of any, Supreme Court precedent adequately addressing a claim that a community custody condition is overbroad or establishing that offenders who serve a term of community custody are entitled to a narrowly tailored condition subject to heightened scrutiny. Nor has he cited to any Supreme Court precedent considering a vagueness challenge to a condition of community custody or parole.[4] The Court is not aware of any case where the Supreme Court has addressed the facts at issue here.[5]

If the Supreme Court has not addressed the particular issue in a holding, the rule is not clearly established, and the state court adjudication cannot be contrary to or an unreasonable application of clearly established federal law. *Carey v. Musladin*, 549 U.S. 70 (2006). Similarly,

---

[4] The Court notes the Supreme Court has applied less strict scrutiny to individuals serving criminal sentences. *See e.g. Turner v. Safley*, 482 U.S. 78 (1987) (prison restrictions are constitutional so long as they are "reasonably related to legitimate penological interests."); *Shaw v. Murphy*, 532 U.S. 223, 231 (2001) (refusing to afford more protection for prisoner speech beyond what *Turner* affords); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (recognizing that parolees are subject to "restrictions not applicable to other citizens."); *Samson v. California*, 547 U.S. 843, 852 (2006) (concluding that parolees "have severely diminished expectations of privacy by virtue of their status alone."); *United States v. Knights*, 534 U.S. 112, 119 (2001) (recognizing that probationers "do not enjoy the absolute liberty to which every citizen is entitled" and are subject to the imposition of "reasonable conditions" of release in the context of a warrantless search of a probationer) (internal quotations omitted). However, this line of cases does not directly address the standard of review applicable to community custody conditions on habeas review as challenged by Petitioner in this Petition. A highly generalized principle of law derived from the Court's opinions does not constitute clearly established federal law for purposes of 28 U.S.C. § 2254(d). *Lopez v. Smith*, 574 U.S. 1, 6 (2014) ("We have before cautioned the lower courts . . . against 'framing our precedents at such a high level of generality.' " (quoting *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam).

[5] The other two cases which Petitioner cites to are not "clearly established" law within the meaning of 28 U.S.C. § 2254(d)(1), as they are not based upon a Supreme Court holding. *See* Dkt. 16 at 3 (citing *United States v. Morgan*, 696 F. App'x 309 (9th Cir. 2017) (unpublished opinion which remanded an unspecified condition of supervised release by agreement of the parties for further consideration in light of *Packingham*) and (*Manning v. Powers*, 281 F. Supp. 3d 953, 957 (C.D. Cal. 2017) (considered whether to grant a preliminary injunction in a 42 U.S.C. § 1983 civil rights case to enjoin a parole condition prohibiting access to social media sites). In his Supplemental Traverse, Petitioner concedes the "Supreme Court has never considered a probationer's social media rights." Dkt. 22 at 3.

REPORT AND RECOMMENDATION - 11

" 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.' " *White v. Woodall*, 572 U.S. 415, 426 (2014) (quoting *Yarborough*, 541 U.S. at 666). Accordingly, the state court cannot be said to have unreasonably applied the law as to the unconstitutionality of condition 15. *See Carey v. Musladin,* 549 U.S. 70, 77 (2006); *Brewer,* 378 F.3d at 955. *See also Angiano v. Scribner,* 366 Fed. Appx. 726, 727 (9th Cir. 2010) ("On federal habeas review, relief is not available based on conflicting interpretations of circuit precedent.' "); *Alarcia v. Remington,* 2010 WL 3766337, at *8 (C.D. Cal. Sept. 10, 2010), *report and recommendation adopted by,* 2010 WL 3724552 (C.D. Cal. Sept.14, 2010) (finding that the petitioner had failed to cite to, and the court could not locate any Supreme Court precedent on the issue of the right to a public trial in the context of a partial closure, therefore, the habeas claim was denied).

Therefore, Petitioner has not demonstrated the state court's conclusion was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the Court concludes Petitioner's first and second grounds for relief be denied.

## IV.    Evidentiary Hearing

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the

record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. The Court finds it is not necessary to hold an evidentiary hearing in this case because, as discussed in this Report and Recommendation, the Petition may be resolved on the existing state court record.

## V. Certificate of Appealability

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or would conclude the issues presented in the Petition should proceed further. Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

## VI. Conclusion

For the above stated reasons, the Court concludes habeas jurisdiction exists for the Petition, but recommends the Petition be denied on the merits. The Court further recommends a certificate of appealability be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo

review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on June 25, 2021, as noted in the caption.

Dated this 9th day of June, 2021.

David W. Christel
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14